

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

> This Opinion
> Overrules Opinion *the answer*
> *to 2nd question in*
> # *0-3205*

Honorable C. S. Clark, Chairman
State Board of Water Engineers
Austin, Texas

Dear Sir:

Opinion No. 0-3205-A
Re: Whether owners of water wells,
other than artesian, may be
required to file annual re-
ports or statements with the
Board of Water Engineers.

On February 21, 1941, you requested our opinion
in response to the following two questions:

"1. Are owners of water wells, other than
artesian, required to file annual reports or
statements with the Board of Water Engineers
under the provisions of Article 7615, Vernon's
Annotated Civil Statutes of Texas?

"2. Can owners of water wells, other than
artesian, be required to file annual reports
with the Board of Water Engineers covering the
information required by Article 7615, V.A.C.S.,
under a rule or regulation promulgated by the
Board pursuant to the powers vested in said
Board under the provisions of Section 6 of Art-
icle 848a, Vernon's Penal Code of Texas."

We answered your request in our Opinion No. 0-3205
on March 11, 1941. However, upon careful reconsideration we
have reached the conclusion that our affirmative answer to
the second question was wrong.

Article 7615, Vernon's Annotated Civil Statutes,
reads:

"On or before the first day of March of each year, every person, association of persons, corporation, water improvement or irrigation district who, during any part of the preceding calendar year, owned or operated any artesian well for any purpose other than that of domestic use, shall furnish, under oath, to the Board of Water Engineers, upon blanks to be furnished by the Board, a detailed statement showing the quantity of water which has been derived from such well, and the character of use to which same has been applied, together with the change in level of water table of said well, and if used in irrigation, the acreage and yield of each crop, together with such additional data as the Board may require."

Article 848a, Vernon's Annotated Penal Code, reads as follows:

"Section 1. It is hereby declared to be the policy and duty of the Texas State Board of Water Engineers to make and enforce rules and regulations for the conservation, protection, preservation and distribution of all underground, subterranean and percolating waters of every kind and nature whatsoever situated within the limits of the State of Texas.

"Section 2. Every water well drilled, dug, or excavated in this State which encounters salt water or water containing mineral or other substances injurious to vegetation or agriculture shall be by the owner of said well securely plugged or cased, so that the salt water or other water containing mineral or other substances injurious to vegetation or agriculture shall be confined to the strata in which found, and said casing or plugging shall be done in such manner as to effectively prevent said salt water or water containing mineral or other substances injurious to vegetation or agriculture from escaping from the strata in which found into any other water bearing strata or onto the surface of the ground.

Honorable C. S. Clark, Chairman, Page 3

"Section 3. All the foregoing Sections are declared to be equally applicable to wells heretofore drilled, dug or excavated, and wells hereafter to be drilled, dug or excavated.

"Section 4. The Board of Water Engineers shall make rules and regulations for the effective enforcement of the foregoing Sections, and shall efficiently enforce same.

"Section 5. If any owner of any well described in any of the foregoing Sections shall for a period of thirty days fail or refuse to securely and properly plug, case or cap the same after having been ordered to do so by the Board of Water Engineers, he shall be deemed guilty of a misdemeanor and shall be subject to a fine of not less than Ten ($10.00) Dollars nor more than Five Hundred ($500.00) Dollars for each and every day that he shall fail or refuse to plug, case or cap said well after the expiration of the time above stated, and each day that said owner so fails or refuses to plug, case or cap said well shall be considered a separate offense.

"Section 6. The Board of Water Engineers shall do all things necessary for the conservation, protection, preservation and distribution of underground, subterranean and percolating waters in this State and shall make and enforce appropriate rules and regulations therefor and the specific enumeration of special powers and duties herein shall not be construed to deny the said Board other powers and duties necessary to the carrying out of the purposes of this Act as expressed in Sections 1 and 6 hereof. Failure for a period of more than thirty days to comply with any order of said Board issued in pursuance of the powers and duties herein created shall subject the person so violating said order to the penalties enumerated in Section 5 hereof."

Honorable C. S. Clark, Chairman, Page 4

An inspection of Chapter 1, Title 128, Vernon's Civil Statutes, shows that Article 7615 is merely a part of comprehensive legislation enacted to govern the taking of water from artesian wells. In support of its authority to make the requirement mentioned in the second question the Board of Water Engineers would have to stand upon the rule making power conferred by said Article 848a, unaided by any other statutory law.

Except as to the plugging or casing of wells which produce water containing mineral or other substances injurious to vegetation or agriculture, Article 848a establishes no primary standards by which the Board of Water Engineers is to be guided. Sections 1, 4 and 6, of said Article 848a, can be taken only as general declarations of public policy, other than to authorize the making of orders, rules and regulations looking to the enforcement of Section 2. The information required to be contained in a statement complying with Article 7615 quite clearly would not be of assistance to the Board with respect to its duties in connection with Section 2 of Article 848a. Such statements would be of value to the Board only in looking to a different purpose than to require compliance with Section 2 of said Article 848a. It is true that the legislative body may give authorization to selected instrumentalities or administrative bodies "to fill up the details" (Chief Justic Marshall in Wayman vs. Southard, 10 Wheat 1, 6 L. Ed. 253), after the primary standards have been set. But, under the division of powers provision, Article 2, of our Constitution, the legislature cannot delegate its power to make the law itself. Railroad Commission vs. H. & T.C. R. Co., 38 S.W. 750; G.C. & S. F. Ry. Co. vs. State, 120 S. W. 1028, at p. 1034; Panama Refg. Co. vs. Ryan, 293 U. S. 388, 79 L. Ed. 446; McCombs vs. Dallas County, 136 S. W. (2d) 975; Brown vs. Humble Oil & Refg. Co., 83 S.W. (2d) 935, at pp. 940-941. From the opinion of the Supreme Court in the last cited case we quote:

"In the absence of a well-defined standard or rule in the statutes defining the public policy of the state with respect to the mineral interest, the Railroad Commission would be without authority to promulgate rules, regulations, or orders relating to the protection of oil and gas. The power to pass laws rests with the Legislature, and that power cannot be delegated to some commission or other tribunal."

Honorable C. S. Clark, Chairman, Page 5


        Upon further consideration of the above principles
we do not believe that Sections 1, 4 and 6, of Article 848a,
can be given the effect of authorizing the Board of Water
Engineers to require reports like those mentioned in Article
7615 to be filed by the owners or operators of water wells
which are not artesian.  We, therefore, withdraw our pre-
vious answer to your second question and now answer the same
in the negative.

                                    Yours very truly

                            ATTORNEY GENERAL OF TEXAS

APPROVED APR 18, 1941

                            By  James P. Hart
    FIRST ASSISTANT                  James P. Hart
    ATTORNEY GENERAL                      Assistant


                            By  George W. Sparks
                                 George W. Sparks

GWS:ej



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN